IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 14, 2007 Session

## MARC ESKIN ET AL. v. ALICE B. BARTEE ET AL.

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. CT-006445-03      Karen R. Williams, Judge**

---

**No. W2006-01336-SC-R11-CV - Filed August 14, 2008**

---

This appeal involves claims for negligent infliction of emotional distress made by two family members of a child who was seriously injured in an automobile accident. In their complaint filed in the Circuit Court for Shelby County, the injured child's mother and brother alleged that they had sustained severe emotional injuries after they observed him lying on the pavement in a pool of blood. The injured child's parents served a copy of the complaint on their automobile insurance company because the driver of the automobile that struck their son lacked adequate insurance. The insurance company moved for a partial summary judgment on the negligent infliction of emotional distress claim because neither the injured child's mother nor his brother had seen or heard the injury-producing accident. The trial court granted the insurance company's motion, and the injured child's mother and brother appealed to the Tennessee Court of Appeals. The appellate court reversed the summary judgment and remanded the case for further proceedings. We granted the insurance company's Tenn. R. App. P. 11 application for permission to appeal to determine whether the Court of Appeals correctly permitted these negligent infliction of emotional distress claims to proceed. We have determined that persons who observe an injured family member shortly after an injury-producing accident may pursue a claim for negligent infliction of emotional distress.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., JANICE M. HOLDER, CORNELIA A. CLARK, and GARY R. WADE, JJ., joined.

Warren D. McWhirter, Memphis, Tennessee, for the appellant, USAA Casualty Insurance Company.

J. Houston Gordon, Covington, Tennessee, and Irma W. Merrill-Stratton, Memphis, Tennessee, for the appellees, Karen Eskin and Logan Eskin.

### OPINION

### I.

Marc and Karen Eskin and their three children live in Cordova, a community that lies on the northeast side of Memphis, Tennessee. During the 2002-2003 school year, Brendan Eskin, the

Eskins' older son, attended the Chimneyrock Elementary School[1] which was a short distance from their home. Brendan Eskin was at school on November 19, 2002. Because Ms. Eskin was going to be unable to pick up her son at the end of the school day, she made arrangements with a neighbor, Jan Durban, to pick him up and to bring him home.

Chimneyrock Elementary maintains an area for students using private transportation to travel to and from school.[2] This area includes a driveway with three lanes. The far left lane is used to park vehicles; the middle lane is the through lane; and the right lane adjacent to the curb is used to drop off and pick up the students. For the purpose of this appeal, we assume that drivers are permitted to stop in the right lane long enough to drop off or pick up students and are not permitted to leave their vehicles unattended.

The events that gave rise to this lawsuit occurred when school let out for the day on November 19, 2002. According to the Eskins' complaint, a driver had left his minivan unattended in the right lane. When Alice Bartee arrived at Chimneyrock Elementary, she pulled behind the unattended minivan. She moved her automobile after a school employee directed her to park in front of the minivan. Ms. Bartee lost control of her automobile as she was attempting to park in front of the minivan. She slammed into Ms. Durban's vehicle that had stopped at the curb, and then Ms. Bartee's automobile jumped the curb and struck Brendan Eskin.[3] The boy was seriously injured.

Ms. Durban telephoned Ms. Eskin from the scene. She told Ms. Eskin that her automobile had been struck from the rear and that Brendan Eskin had been hurt. Based on the conversation and the tenor of Ms. Durban's voice, Ms. Eskin assumed that the accident must have been just a "fender bender" and that her son had not been seriously injured. Ms. Eskin told Ms. Durban that she was "on [her] way to the school to get Brendan." After she hung up, Ms. Eskin gathered up her younger son, Logan Eskin, her daughter, and a child who was visiting Logan Eskin and drove the very short distance to the school.

After Ms. Eskin parked her automobile at the school, she and the children walked to the pick up and drop off area. As Ms. Eskin and the children approached the area, she and Logan Eskin saw Brendan Eskin lying on the pavement in a pool of blood.[4] According to Ms. Eskin, her son was not being attended to, and he appeared to be lifeless. Both Ms. Eskin and Logan Eskin screamed and

---

[1] In their pleadings and other papers, the parties erroneously refer to Chimneyrock Elementary School as "Chimney Rock Elementary School." We will refer to the school as "Chimneyrock Elementary."

[2] These facts have been taken from the Eskins' complaint and do not appear to be disputed by USAA Casualty Insurance Company ("USAA").

[3] In later filings, the Eskins asserted that Ms. Bartee's automobile actually struck other children in addition to Brendan Eskin as well as the school building itself.

[4] As far as the record shows, Ms. Eskin and Logan Eskin saw Brendan Eskin in essentially the same condition he had been in immediately after he was struck by Ms. Bartee's automobile. There is no indication that Brendan Eskin had been moved or that the scene of the accident had been changed in any material way.

tried to run to Brendan Eskin but were restrained. Brendan Eskin sustained permanent brain damage as a result of being struck by Ms. Bartee's automobile.

On November 17, 2003, the Eskins filed suit in the Circuit Court for Shelby County against Ms. Bartee, the driver and owner of the unattended minivan, Shelby County, and the Shelby County Board of Education.[5] The complaint alleged that Ms. Eskin and Logan Eskin had been "emotionally traumatized by the event" and that they had been damaged by "[f]right, serious shock, and severe emotional injuries," "[l]oss of enjoyment of life," and "[e]xpenses for medical, psychological, and pharmaceutical services," both incurred and to be incurred. Based on these and other claims, the Eskins requested $9,000,000 in compensatory damages on behalf of Brendan Eskin, $500,000 in compensatory damages on behalf of Logan Eskin, and $1,000,000 for themselves.

Because Ms. Bartee lacked adequate insurance, the Eskins served a copy of their complaint on USAA, their own insurance carrier, in accordance with Tennessee's uninsured motorist statutes.[6] In July 2005, USAA filed a motion for partial summary judgment. While the motion does not comply with Tenn. R. Civ. P. 7.02(1), the accompanying memorandum of law explains that USAA believed it was entitled to a judgment as a matter of law with regard to Ms. Eskin's and Logan Eskin's negligent infliction of emotional distress claims because they had not been present when the accident occurred and, therefore, did not "observe the accident occur through one of . . . [their] senses." The Eskins responded by asserting that Tennessee's precedents establishing the tort of negligent infliction of emotional distress did not "require that there be a 'contemporaneous' viewing of the accident itself which results in traumatic injuries to a third party."

Following a hearing in December 2005, the trial court filed an order on February 17, 2006, granting USAA's motion for summary judgment.[7] The trial court also designated the order as final and immediately appealable under Tenn. R. Civ. P. 54.02. Accordingly, the Eskins appealed the dismissal of the negligent infliction of emotional distress claims of Ms. Eskin and Logan Eskin to the Tennessee Court of Appeals.

On December 27, 2006, the Court of Appeals filed an opinion reversing the order of the trial court granting USAA a summary judgment. *Eskin v. Bartee*, No. W2006-01336-COA-R3-CV, 2006 WL 3787823 (Tenn. Ct. App. Dec. 27, 2006). In the majority opinion, Judge Crawford, interpreting *Ramsey v. Beavers*, 931 S.W.2d 527, 531 (Tenn. 1996), determined that "sensory observance of the injury-producing event is not an absolute[ly] essential" element of a claim for negligent infliction of emotional distress. *Eskin v. Bartee*, 2006 WL 3787823, at *6. In a separate opinion, Judge Kirby

---

[5]The Eskins eventually dismissed their claims against Shelby County.

[6]Tenn. Code Ann. §§ 56-7-1201 through -1206 (2000).

[7]The order appeared to dismiss all claims asserted by the Eskin family. On appeal, the Court of Appeals directed the trial court to amend the order to clarify that it granted only a partial summary judgment with regard to Ms. Eskin's and Logan Eskin's claims for negligent infliction of emotional distress. No issue has been taken with this portion of the Court of Appeals' decision. In its application for permission to appeal to this Court, USAA raised the issue of whether the Court of Appeals improperly modified the trial court's order. However, USAA did not address this argument in its brief, and, therefore, has waived the issue.

concurred with the majority opinion by noting that the result was not required by *Ramsey v. Beavers* but rather was a "reasonable extension" of the holding in the *Ramsey v. Beavers* opinion. *Eskin v. Bartee*, 2006 WL 3787823, at *8-9. We granted USAA's application for permission to appeal to determine whether persons seeking to recover damages for the negligent infliction of emotional distress must be in sufficient proximity to the injury-causing accident to perceive the event with one of their senses.

## II.

The standards for reviewing summary judgments on appeal are well settled. Summary judgments are not disfavored as procedural devices. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). They are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Lawrence County Educ. Ass'n v. Lawrence County Bd. of Educ.*, 244 S.W.3d 302, 309 (Tenn. 2007); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001). *See also Fruge v. Doe*, 952 S.W.2d at 410. Thus, a court should grant a summary judgment when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Griffis v. Davidson County Metro. Gov't*, 164 S.W.3d 267, 284 (Tenn. 2005); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002).

A summary judgment enjoys no presumption of correctness on appeal. *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 373 (Tenn. 2007); *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). Therefore, in each case the appellate court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). We consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d at 373-74; *Abbott v. Blount County*, 207 S.W.3d 732, 735 (Tenn. 2006).

When reviewing the evidence, we must first determine whether a factual dispute exists. If a factual dispute exists, we must then ascertain whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d at 374; *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).

## III.

On this appeal, USAA argues that Ms. Eskin and Logan Eskin cannot recover damages for negligent infliction of emotional distress because they did not see or hear the accident that caused Brendan Eskin's injuries. The Eskins, on the other hand, contend that the Court of Appeals was correct in its holding that sensory observation of the accident is not an essential element of the claim under Tennessee law. We have determined that a family member's allegation of a sensory

-4-

observation of the immediate aftermath of an injury-producing event can provide the basis for a claim of negligent infliction of emotional distress.[8]

## A.

The tort of negligent infliction of emotional distress has emerged as an accepted cause of action within approximately the last half century.[9] Prior to that time, the courts had declined to award damages for mental injuries that were not accompanied by physical injuries because the early common law was "wary of opening the floodgates to fraudulent, frivolous, and perhaps even marginal lawsuits."[10] Today, however, virtually all states recognize the tort of negligent infliction of emotional distress in some form.[11] A majority of these states permit recovery by bystanders who perceive the negligent infliction of physical injury to another person.[12]

Despite the increasing recognition of negligent infliction of emotional distress claims, there is little consensus regarding the elements of the tort. This lack of uniformity arises from lingering concerns about permitting the recovery of damages for purely emotional injuries. Professors Prosser and Keeton cite three of these concerns as follows:

> (1) the problem of permitting legal redress for harm that is often temporary and relatively trivial; (2) the danger that claims of mental harm will be falsified or imagined; and (3) the perceived unfairness of imposing heavy and disproportionate financial burdens upon a defendant, whose conduct was only negligent, for consequence which appear remote from the "wrongful" act.

---

[8]This opinion involves only the tort of negligent infliction of emotional distress. It does not involve the separate torts of intentional infliction of emotional distress, *see Miller v. Willbanks*, 8 S.W.3d 607, 610-12 (Tenn. 1999), or reckless infliction of emotional distress, *see Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 31-33 (Tenn. 2005).

[9]John J. Kircher, *The Four Faces of Tort Law: Liability for Emotional Harm*, 90 Marq. L. Rev. 789, 807-08 (2007) (hereinafter "Kircher"). The development of the tort was heavily influenced by the work of Professor (and later Judge) Calvert Magruder who served as an advisor to the drafters of the damages section in the Restatement of Torts. *See* Calvert Magruder, *Mental & Emotional Disturbance in the Law of Torts*, 49 Harv. L. Rev. 1033 (1936).

[10]Robert J. Rhee, *A Principled Solution for Negligent Infliction of Emotional Distress Cases*, 36 Ariz. St. L.J. 805, 808 (2004).

[11]Professor Kircher reports that only Arkansas and New Mexico do not recognize the tort. Kircher, 90 Marq. L. Rev. at 809 n.110.

[12]Professor Kircher reports that Arkansas, Oklahoma, and Virginia do not permit bystanders to pursue a negligent infliction of emotional distress claim. He also reports that the courts in Alabama, Colorado, Idaho, Kansas, and Kentucky have not yet addressed negligent infliction of emotional distress claims by bystanders. Kircher, 90 Marq. L. Rev. at 819-20.

W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 54, 360-61 (1984).[13] As a result of these continuing concerns, the courts have recognized a number of principles whose purpose is to assist courts and juries in separating the meritorious and compensable claims from those that are not.

The most frequently adopted principles include: (1) denying recovery for emotional injuries without accompanying bodily harm or other compensable damage to the plaintiff,[14] (2) denying recovery unless the plaintiff is in the "zone of danger," (3) denying recovery unless the plaintiff has "sensory observation" of the event causing the third party's injuries, (4) requiring the existence of a special relationship between the plaintiff and the injured party, and (5) denying recovery unless the injury to the other person is, or is reasonably perceived to be, serious.

A systematic review of decisions of state courts applying these principles prompts three conclusions. First, each state that has recognized the tort of negligent infliction of emotional stress has developed its own set of principles based on the decisions of their courts regarding the most appropriate way to address the concerns identified by Professors Prosser and Keeton.[15] Second, because the life of the law is experience, not logic,[16] many states, over time, have changed the principles or the emphasis given to particular principles. Third, the direction of the development of the law in the United States relating to negligent infliction of emotional distress claims has been to enlarge rather than to restrict the circumstances amenable to the filing of a negligent infliction of emotional distress claim.

**B.**

The development of the tort of negligent infliction of emotional distress in Tennessee tracks the development of the tort in other states. While it has been neither smooth nor linear, it has been influenced by the court's "desire to separate, at the prima facie stage and in a meaningful and rational manner, the meritorious cases from the nonmeritorious ones." *Camper v. Minor*, 915 S.W.2d 437, 445 (Tenn. 1996). Like other states, this Court has undertaken to accomplish this goal by using many of the same principles, or as we have called them "objective standards,"[17] that have been used by courts in other states.

Ninety years ago, this Court categorically rejected the idea that persons could recover for emotional distress unless that emotional distress was physically manifested in some way. *Memphis St. Ry. v. Bernstein*, 137 Tenn. 637, 639-40, 194 S.W. 902, 903 (1917). Ten years later, we

---

[13]*See also Payton v. Abbott Labs*, 437 N.E.2d 171, 178-81 (Mass. 1982); *Sinn v. Burd*, 404 A.2d 672, 678 (Pa. 1979); Restatement (Second) of Torts § 436A cmt. b (1965).

[14]Restatement (Second) of Torts § 436A.

[15]Kircher, 90 Marq. L. Rev. at 806-831, 883-906.

[16]Oliver Wendell Holmes, *The Common Law* 5 (Mark De Wolfe Howe ed. 1963) (1888).

[17]*Carroll v. Sisters of Saint Francis Health Servs., Inc.*, 868 S.W.2d 585, 594 (Tenn. 1993) (noting that the Court had "never deviated from an objective standard for negligent infliction of emotional distress claims").

categorically rejected the idea that persons could recover for the mental distress caused by observing the serious injury of another person. *Nuckles v. Tenn. Elec. Power Co.*, 155 Tenn. 611, 613, 299 S.W. 775, 775-76 (1927).

After drawing a clear line against permitting recoveries for negligent infliction of emotional distress, Tennessee's courts began the process of making exceptions to the rule and then moving the line to permit recovery in certain circumstances. Between 1927 and 1982, the Court systematically diluted the requirement that the emotional distress must either have some physical manifestation or be accompanied by a physical injury.[18]

Similarly, we signaled our willingness to permit negligent infliction of emotional distress claims filed by persons who observe the death or serious injury of another person with whom they had a close personal relationship. While we did not approve a negligent infliction of emotional distress claim filed by a father who fainted in a hospital emergency room when he learned of his daughter's injuries a "considerable time" after she had sustained them, we signaled the possibility of permitting bystanders to file negligent infliction of emotional distress actions. We noted that "[i]t may be that this Court should modify the rule stated in the *Nuckles* case . . . so as to permit a recovery by a close relative who visually or audibly witnesses an accident in which one 'near and dear to him' is threatened with or receives serious personal injuries if such close relative sustains physical pain, suffering and injury due to the shock of witnessing such an occurrence." *Shelton v. Russell Pipe & Foundry Co.*, 570 S.W.2d 861, 866 (Tenn. 1978).

The *Shelton v. Russell Pipe & Foundry Co.* decision marked the beginning of a thirty-year period in which this Court has steadily and consistently expanded the ability of bystanders to recover damages for the negligent infliction of emotional distress. In 1996 we abandoned the physical manifestation or injury requirement for these actions. *Camper v. Minor*, 915 S.W.2d at 446. At the same time, we held that a prima facie claim for negligent infliction of emotional distress must include evidence establishing each of the five elements of negligence[19] and, for "stand-alone"

---

[18]The dilution began in 1927 when the Court permitted a widow to recover for the mutilation of her husband's corpse during an autopsy even though the widow had no physical effects from her emotional distress. *Hill v. Traveler's Ins. Co.*, 154 Tenn. 295, 302, 294 S.W. 1097, 1099 (1927). In 1982, the Court permitted a person who had ingested a harmful substance to recover for emotional distress despite the lack of physical injury based on a person's "natural concern and anxiety for the welfare of themselves and of their infant children." *Laxton v. Orkin Exterminating Co.*, 639 S.W.2d 431, 434 (Tenn. 1982). In 1993, we conceded that the physical injury requirement had been "gradually weakened." *Carroll v. Sisters of Saint Francis Health Servs., Inc.*, 868 S.W.2d at 593.

[19]The five elements of negligence include: (1) a duty of care owed by the plaintiff to the defendant, (2) conduct by the defendant that breaches this duty, (3) an injury or loss, (4) a cause-in-fact connection between the plaintiff's injury or loss and the defendant's conduct, and (5) the existence of proximate or legal cause. *Draper v. Westerfield*, 181 S.W.3d 283, 290 (Tenn. 2005); *Hale v. Ostrow*, 166 S.W.3d 713, 716 (Tenn. 2005).

negligent infliction of emotional distress cases,[20] expert proof establishing that the plaintiff's emotional distress is "serious" or "severe."[21]  *Camper v. Minor*, 915 S.W.2d at 446.

Even though we adopted a "general negligence approach" in *Camper v. Minor*, we did not abandon the objective gatekeeping rules that had been developed in earlier cases to address the concerns about negligent infliction of emotional distress claims expressed by Professors Prosser and Keeton, the Restatement (Second) of Torts, and others.  We expressly stated that we were not abandoning the "zone of danger" rule and that we would await an appropriate case to integrate it into the general negligence approach.  *Camper v. Minor*, 915 S.W.2d at 446 n.2.

The occasion to revisit the tort of negligent infliction of emotional distress arose nine months after our decision in *Camper v. Minor* in a case involving a complaint filed by a son who witnessed an automobile strike and kill his mother.  Even though the son was not in the "zone of danger," this Court permitted him to pursue a negligent infliction of emotional distress claim against the driver of the automobile that struck his mother after noting that "very real injuries may be suffered by those outside the zone of danger, but close to a traumatic, emotive event involving a close relative." *Ramsey v. Beavers*, 931 S.W.2d at 529.  We emphasized that this approach requires persons seeking to recover damages for the negligent infliction of emotional distress to establish that the defendant's negligent conduct was the cause-in-fact of both the victim's death or injury and the plaintiff's emotional injuries and that the victim's death or injury and the plaintiff's emotional injuries were the "proximate and foreseeable results of [the] defendant's negligence." *Ramsey v. Beavers*, 931 S.W.2d at 531.

The Court also discussed four of the objective standards that it had traditionally used to define the scope of negligent infliction of emotional distress claims.  On this occasion, however, the Court analyzed these standards in the context of analyzing the foreseeabililty of the plaintiff's emotional injuries.  The Court stated that the first and second factors are the "plaintiff's physical

---

[20]The Court has defined a "stand-alone" negligent infliction of emotional distress claim as a claim that seeks recovery only for emotional injuries and that is not accompanied by "additional claims for damages."  *Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133, 137 (Tenn. 2001).

[21]The Court held that a serious or severe emotional injury occurs "where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Camper v. Minor*, 915 S.W.2d at 446.  In a later case, the Court noted that the intensity and duration of the mental distress are factors that should be considered when determining whether an emotional injury is serious or severe.  *Miller v. Willbanks*, 8 S.W.3d at 615.

The "unable to adequately cope" definition of serious or severe mental injury first appeared in *Rodrigues v. State*, 472 P.2d 509, 520 (Haw. 1970).  Tennessee is one of thirteen states currently using this definition.  One knowledgeable commentator has characterized the definition as "unfortunate" and has called for its further refinement. John A. Day, *A Primer on the Law of Negligent Infliction of Emotional Distress*, Tenn. B.J., May 2005, at 28, 28 n.5.  While other courts and commentators are working to refine the legal elements of serious or severe emotional distress to help the bench, the bar, and expert witnesses to more reliably differentiate between meritorious and non-meritorious claims, *see, e.g.*, *Blair v. Tynes*, 621 So. 2d 591, 601 (La. 1993); *Catron v. Lewis*, 712 N.W.2d 245, 249-50 (Neb. 2006); *Paugh v. Hanks*, 451 N.E.2d 759, 765-68 (Ohio 1983); William J. Koch et al., *Psychological Injuries: Forensic Assessment, Treatment, and Law* 33, 134 (2006), this case does not provide an appropriate vehicle to address this issue because the issue of the type of mental distress required to support a claim for negligent infliction of emotional distress was not addressed by the courts below.

location at the time of the . . . accident and awareness of the accident." *Ramsey v. Beavers*, 931 S.W.2d at 531.[22]  The third factor is the apparent seriousness of the victim's injuries.  *Ramsey v. Beavers*, 931 S.W.2d at 531.[23]  The fourth factor was the closeness of the relationship between the plaintiff and the victim.  *Ramsey v. Beavers*, 931 S.W.2d at 531."[24]

Finally, the Court used *Ramsey v. Beavers* as a vehicle to continue its discussion regarding the types of serious or severe injuries that would be required to maintain a successful negligent infliction of emotional distress claim.  We reiterated that recovery for the negligent infliction of emotional distress was limited to "serious or severe emotional injuries" and that recovery could not be predicated on "every minor disturbance to a person's mental tranquility," "hurt feelings, trivial upsets . . . [or] temporary discomfort."  *Ramsey v. Beavers*, 931 S.W.2d at 532.[25]

The most recent case decided by this Court relating to continuing the evolution of the tort of negligent infliction of emotional distress was handed down four years ago.  It involved a mail carrier who filed both intentional infliction of emotional distress and negligent infliction of emotional distress claims against the estate of a homeowner on her route after watching the homeowner shoot his wife and then commit suicide.  *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48 (Tenn. 2004).  Not only did the Court determine that the facts supported an intentional infliction of emotional distress claim, it also determined that the facts supported a negligent infliction of emotional distress claim as well.

With specific regard to the negligent infliction of emotional distress claim, the Court reiterated the holdings in *Camper v. Minor* and *Ramsey v. Beavers* requiring the plaintiff to prove the five elements of negligence and to prove that his or her emotional injuries were serious or severe. The Court also analyzed the plaintiff's case using the four foreseeability-related factors in the *Ramsey v. Beavers* case.  *Lourcey v. Estate of Scarlett*, 146 S.W.3d at 52-53.

Because Ms. Lourcey did not have any sort of personal relationship with the Scarletts, the Court was also required to focus specifically on the nature of the relationship between the plaintiff

---

[22]The Court noted that emotional injuries are more foreseeable when the plaintiff witnessed or had a "sensory observation" of the event.  *Ramsey v. Beavers*, 931 S.W.2d at 531.  By "sensory observation," the Court explained that it intended to permit recovery by persons who either did not or could not have visually observed the injury occur but who "observe[] the event by some other sense, such as audibly."  *Ramsey v. Beavers*, 931 S.W.2d at 531, n.2.  This portion of the *Ramsey* Court's decision is consistent with the *Shelton* Court's statement that recovery for negligent infliction of emotional distress would be denied to persons "who did not visually or audibly witness the accident in which . . . [their] child was injured."  *Shelton v. Russell Pipe & Foundry Co.*, 570 S.W.2d at 866.

[23]The Court noted that the victim's injuries must be perceived to be serious or fatal.  *Ramsey v. Beavers*, 931 S.W.2d at 531.

[24]Citing the Supreme Court of Nebraska, the Court noted the general agreement "that a mere bystander who has no significant relationship with the victim will not suffer the profound, systematic mental and emotional reaction likely to befall a close relative."  *Ramsey v. Beavers*, 931 S.W.2d at 531 (quoting *James v. Lieb*, 375 N.W.2d 109, 115 (Neb. 1985)).

[25]*See also Miller v. Willbanks*, 8 S.W.3d at 615 n.4; Restatement (Second) of Torts § 46 cmt. j.

and the victim required to recover damages for the negligent infliction of emotional distress. The Court was faced with ambiguous precedents on this point. In many cases, the courts had stressed the central importance, if not necessity, of the existence of a close personal relationship between the plaintiff and the victim. *See Ramsey v. Beavers*, 931 S.W.2d at 531-32; *Shelton v. Russell Pipe & Foundry Co.*, 570 S.W.2d at 866. However, in *Camper v. Minor*, the Court had permitted a plaintiff who had no prior relationship with the victim to pursue damages for negligent infliction of emotional distress. *Camper v. Minor*, 915 S.W.2d at 446. On this occasion, the Court resolved these conflicting decisions by holding that persons who see another person commit suicide after shooting another could maintain a negligent infliction of emotional distress action against the estate of the person who committed suicide without establishing a close relationship with that person. *Lourcey v. Estate of Scarlett*, 146 S.W.3d at 53-54.[26]

## C.

This case involves circumstances that differ from both *Camper v. Minor* and *Lourcey v. Scarlett*. It does not involve strangers or slight acquaintances.[27] It involves a mother who observed her young child lying unconscious in a pool of blood in his school's driveway minutes after he had been struck by an automobile. The issue we must decide is whether this particular mother should be prevented from pursuing a claim for the negligent infliction of emotional distress simply because she did not see or hear the automobile strike her son. Mindful of our obligation to separate the meritorious from the nonmeritorious negligent infliction of emotional distress claims,[28] we have determined that Ms. Eskin should be permitted to pursue her claim.

The courts have not hesitated to permit the recovery of damages for negligent infliction of emotional distress when justice and fairness require it. In Tennessee, as in other states, the courts have moved from completely denying bystanders the right to assert negligent infliction of emotional distress claims, to approving these claims if the bystander saw the injury-producing incident, and then to approving these claims if the bystander heard or had some other sort of sensory perception of the incident.

This case involves plaintiffs who did not actually see or hear the injury-causing accident but who were in sufficient proximity to the accident to be able to arrive at the accident scene quickly before it had significantly changed and before the injured person had been moved. In other words, while the bystanders did not have a sensory perception of the accident as it occurred, they had a

---

[26]The trial court had dismissed Ms. Lourcey's negligent infliction of emotional distress claim for failure to state a claim upon which relief could be granted. Even though the Court reversed the dismissal, it stated that the closeness of the relationship between the plaintiff and the injured victims was relevant to the foreseeability of Ms. Lourcey's serious or severe injuries. *Lourcey v. Estate of Scarlett*, 146 S.W.3d at 53-54.

[27]In addition, Mr. Camper was not a bystander. He was the driver of the truck that struck the automobile being driven by Jennifer Taylor. Mr. Camper's negligent infliction of emotional distress claim against Ms. Taylor's estate was based on the fact that he saw Ms. Taylor's lifeless body when he got out of his truck. *Camper v. Minor*, 915 S.W.2d at 439.

[28]*Camper v. Minor*, 915 S.W.2d at 445.

direct sensory perception of the accident scene and the results of the accident soon after the accident occurred. In this circumstance, we have determined that it is appropriate and fair to permit recovery of damages for the negligent infliction of emotional distress by plaintiffs who have a close personal relationship with an injured party and who arrive at the scene of the accident while the scene is in essentially the same condition it was in immediately after the accident.

Our decision is premised on two considerations. First, we have historically recognized that it is easily foreseeable that persons who have a close personal relationship with an injured party will suffer serious or severe emotional distress when they see someone "near and dear" to them injured. *Ramsey v. Beavers*, 931 S.W.2d at 529; *Shelton v. Russell Pipe & Foundry Co.*, 570 S.W.2d at 866. While we have not explained the basis for this recognition at great length, we find that the Supreme Court of New Jersey provided an eloquent explanation when it noted that

> [t]he knowledge that loved ones are safe and whole is the deepest wellspring of emotional welfare. Against that reassuring background, the flashes of anxiety and disappointment that mar our lives take on softer hues. No loss is greater than the loss of a loved one, and no tragedy is more wrenching than the helpless apprehension of the death or serious injury of one whose very existence is a precious treasure. The law should find more than pity for one who is stricken by seeing that a loved one has been critically injured or killed.

*Portee v. Jaffee*, 417 A.2d 521, 526 (N.J. 1980). Based on the importance of these relationships, the Supreme Court of New Jersey concluded

> that the interest in personal emotional stability is worthy of legal protection against unreasonable conduct. The emotional harm following the perception of the death or serious injury to a loved one is just as foreseeable as the injury itself, for few persons travel through life alone. Ultimately we must decide whether protecting these emotional interests outweighs an interest against burdening freedom of conduct by imposing a new species of negligence liability. We believe that the interest in emotional stability we have described is sufficiently important to warrant this protection. At the same time we are confident that limiting judicial redress to harm inflicted on intimate emotional bonds by the death or serious injury of a loved one serves to prevent liability from exceeding the culpability of [the] defendant's conduct.

*Portee v. Jaffee*, 417 A.2d at 528.

The second consideration is the lack of a principled basis to differentiate between a parent who sees or hears the accident that seriously injures or kills his or her child and a parent who sees his or her injured or dead child at the scene shortly after the accident. It defies reason that the mental distress of the latter parent is less than the former parent. Accordingly, other courts have permitted

-11-

family members who arrived at an accident scene shortly after another family member had been seriously injured or killed to pursue a negligent infliction of emotional distress claim.[29]

When a plaintiff did not witness the injury-producing event, the cause of action for negligent infliction of emotional distress requires proof of the following elements: (1) the actual or apparent death or serious physical injury of another caused by the defendant's negligence, (2) the existence of a close and intimate personal relationship between the plaintiff and the deceased or injured person, (3) the plaintiff's observation of the actual or apparent death or serious physical injury at the scene of the accident before the scene has been materially altered, and (4) the resulting serious or severe emotional injury to the plaintiff caused by the observation of the death or injury.[30] In reaching this conclusion, we do not intend to overrule our holdings in *Camper v. Minor* or *Lourcey v. Estate of Scarlett* that plaintiffs who witness the injury-producing event may recover without demonstrating the existence of a close and intimate personal relationship with the deceased or injured person.

The required relationship between the plaintiff and the deceased or injured person is not necessarily limited to relationships by blood or marriage. While a parent-child relationship, a spousal relationship, a sibling relationship, or the relationship among immediate family members provides sufficient basis for a claim, other intimate relationships such as engaged parties or step-parents and step-children will also suffice. The burden is on the plaintiff to prove the existence of the close and intimate personal relationship, and the defendant may contest the existence of the relationship.[31]

---

[29]*Clohessy v. Bachelor*, 675 A.2d 852, 860 (Conn. 1996); *Groves v. Taylor*, 729 N.E.2d 569, 573 (Ind. 2000); *Corso v. Merrill*, 406 A.2d 300, 307 (N.H. 1979); *Portee v. Jaffee*, 417 A.2d at 526-28; *Landreth v. Reed*, 570 S.W.2d 486, 489-90 (Tex. Civ. App. 1978); *Hegel v. McMahon*, 960 P.2d 424, 429-30 (Wash. 1998); *Bowen v. Lumbermens Mut. Cas. Co.*, 517 N.W.2d 432, 434 (Wis. 1994); *Gates v. Richardson*, 719 P.2d 193, 199 (Wyo. 1986).

[30]The Supreme Court of California was the first court to consider what we refer to as the objective standards in the context of a foreseeability analysis. *Dillion v. Legg*, 441 P.2d 912, 921-24 (Cal. 1968). We used this methodology in *Lourcey v. Estate of Scarlett*, 146 S.W.3d at 54 and *Ramsey v. Beavers*, 931 S.W.2d at 531. However, the Supreme Court of California no longer considers these factors in the context of foreseeability determinations and has resumed considering them as eligibility determinants. *Thing v. La Chusa*, 771 P.2d 814, 820 (Cal. 1989); *Elden v. Sheldon*, 758 P.2d 582, 583 (Cal. 1988); *see also* Howard H. Kestin, *The Bystander's Cause of Action for Emotional Injury: Reflections on the Relational Eligibility Standard*, 26 Seton Hall L. Rev. 512, 528 (1996). In light of our express desire to fashion objective standards that can be used at the prima facie stage to separate meritorious from nonmeritorious claims, *Camper v. Minor*, 915 S.W.2d at 445; *Carroll v. Sisters of Saint Francis Health Servs., Inc.*, 868 S.W.2d at 594, we have incorporated the objective standards as integral elements of the cause of action. By doing so, it is our intention to enable courts in future cases to determine at an early stage whether a plaintiff should be permitted to pursue a negligent infliction of emotional distress claim. Having removed those objective standards from our duty analysis, we conclude that they are no longer matters of law to be determined by the trial court. *See Staples v. CBL & Assoc., Inc.*, 15 S.W.3d at 89 (holding that the existence of duty is a legal issue to be determined by the courts). Rather, each of the objective standards presents a factual issue to be determined by the finder of fact.

[31]For example, a biological parent who, as a practical matter, has no relationship with a child may not pursue a negligent infliction of emotional distress claim should he or she happen to see the child at the scene of an accident. The existence of a relationship in name only, without the accompanying intimate emotional bonds is not sufficient to support the claim we recognize today.

**D.**

Ms. Eskin and Logan Eskin were not physically present when Ms. Bartee struck Brendan Eskin. Neither of them had a sensory perception of the accident itself – that is, neither of them saw or heard Ms. Bartee's automobile strike Brendan Eskin. However, the evidence is undisputed that both of them observed Brendan Eskin in a seriously injured state at the scene of the accident. According to Ms. Eskin's affidavit, the only evidence submitted on this point, she and Logan Eskin saw Brendan Eskin lying on the pavement in a pool of blood. His body was apparently lifeless. No one was trying to help Brendan Eskin when Ms. Eskin and Logan Eskin first saw him, and the boy had apparently not been moved.

Based on these facts, we have determined that both Ms. Eskin and Logan Eskin have made out a prima facie negligent infliction of emotional distress claim. They have alleged that Brendan Eskin's serious injuries were caused by Ms. Bartee's negligence. They have demonstrated that they have a close and intimate personal relationship with Brendan Eskin. They have demonstrated that they observed Brendan Eskin in a seriously injured state at the accident scene shortly after the accident occurred. Finally, they have alleged that they have experienced severe or serious mental injuries as a result of observing Brendan Eskin at the scene. Accordingly, we have determined that the Court of Appeals correctly reversed the summary judgment dismissing Ms. Eskin's and Logan Eskin's claims and properly remanded the case to the trial court for further proceedings.

**IV.**

We affirm the judgment of the Court of Appeals reversing the partial summary judgment dismissing the negligent infliction of emotional distress claims filed by Ms. Eskin and Logan Eskin and remanding the case to the trial court for further proceedings. We tax the costs of this appeal to USAA Casualty Insurance Company and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE