# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 29, 2012 Session

## GERALD FARRAR v. MICHAEL E. DYER ET AL.

### Appeal from the Circuit Court for Rhea County
### No. 11-CV-183     Buddy Perry, Judge

### No. E2012-00485-COA-R3-CV-FILED-SEPTEMBER 27, 2012

Gerald Farrar ("the Claimant") submitted a claim under his homeowner's insurance policy after his house was badly damaged by fire. His insurer, Tennessee Farmers Mutual Insurance Company ("the Company") denied coverage and filed a declaratory judgment action. The Company alleged that the Claimant had made a misrepresentation on his application – one that increased the Company's risk of loss. The Claimant filed a counterclaim in which he alleged that the Company's agent, Michael E. Dyer ("the Agent"), misled him about the meaning of question 13 on the application, the answer to which contains the alleged misrepresentation. Following a bench trial, the court found in favor of the Company and dismissed the Claimant's counterclaim predicated on the Claimant's failure to carry the burden of proof. We affirmed the trial court's judgment in *Tennessee Farmers Mut. Ins. Co. v. Farrar*, 337 S.W.3d 829 (Tenn. Ct. App. 2009) ("*Farrar I*"). The Claimant then filed this action against the Agent alleging that the Agent made a misrepresentation about the meaning of question 13 that caused him to give an incorrect answer on the application. The complaint also named the Company as a defendant "principal" responsible for the Agent's actions. The trial court dismissed the case on summary judgment, holding that *Farrar I* is a bar to this second action. The Claimant appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR. J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Samuel F. Robinson III, Chattanooga, Tennessee, for the appellant, Gerald Farrar.

Michael R. Campbell and Lauren M. Rutherford, Chattanooga, Tennessee, for the appellees, Michael E. Dyer and Tennessee Farmers Mutual Insurance Company.

# OPINION

## I.

The factual background of this controversy is accurately and completely set out in our opinion in *Farrar I* as follows:

> The Claimant's house was insured under a policy of homeowners' insurance issued by the Company. The structure was damaged by fire on June 22 or 23, 2006. The Company denied coverage based upon an alleged misrepresentation on the Claimant's application for the policy. It subsequently filed a declaratory judgment suit against the Claimant seeking a declaration of the parties' rights under the policy.
>
> The Claimant had lived in the house since 2001. He initially shared the residence with Roy Vollheim and his son, Gary Vollheim. Gary Vollheim had been disabled since the 1960s and had a history of alcoholism and mental illness. When the Claimant first moved into the house, Roy Vollheim owned the property. The property had been insured by the Company for a number of years. When Roy Vollheim died, Gary Vollheim inherited the property.
>
> After Roy Vollheim's death, and consistent with his wishes, Gary Vollheim quitclaimed the property to the Claimant, retaining a life estate. Thereafter, the Claimant paid all of the household expenses, including taxes, utilities, and repairs. Following Roy Vollheim's death, the Claimant and Gary Vollheim continued to live in the house.
>
> Sometime after Roy Vollheim's death, the Claimant and Gary Vollheim made an appointment to see [the Agent] . . . for the purpose of advising him of Roy Vollheim's death. The Claimant told [the Agent] that he wanted to obtain a new insurance policy covering the house. The Claimant testified that he brought copies of tax records for the property as well as his copy of the deed to the meeting. The tax records and the deed show that Gary Vollheim quitclaimed the property to the

Claimant, retaining a life estate. All agree that Gary Vollheim was present at the meeting.

[The Agent], as the agent for the deceased, had the old policy number. During the meeting, [the Agent] filled out an application for insurance. [The Agent] asked the questions on the application form and wrote down the Claimant's answers. Question 13 asked, "[Does] [a]ny other party have an ownership or other interest, of any type, in this property?" The application reflects the Claimant's answer as, "No."

The Claimant testified that he told [the Agent] that Gary Vollheim had a life estate. The Claimant stated that, "[the Agent] asked does your ex-wife have any interest in the property or does anybody else have any interest in the property other than you and Gary right here?" The Claimant also testified that he told [the Agent] that the living conditions in the house had not changed – that he and Gary both were still living in the house. [The Agent] testified that he does not remember what the Claimant brought with him to the meeting and that he does not remember the specifics of the conversation with him, except for what he wrote down on the application. After the meeting, the Company issued an insurance policy on the house and its contents. A year later, the policy was renewed. The insured's name on the renewal certificate is reflected as "Gerald B. Farrar," *i.e.*, the Claimant.

In June 2006, the Claimant was an over-the-road truck driver. While the Claimant was away, Gary Vollheim intentionally cut his wrists. A neighbor, Ronald Mills, testified that on the night of Gary Vollheim's death, Mr. Vollheim called him at 12:30 a.m. According to Mr. Mills, Mr. Vollheim was agitated about some letters. Mr. Mills, who lived in close proximity to Mr. Vollheim, told him that they would talk the next morning.

The next day, in the morning, Mr. Mills walked out of his house to get the newspaper. As he walked down his driveway, he saw that there was blood "all over the back of my pickup truck." He returned to his house and "called [his] next door neighbor across the street." When the neighbor arrived, they followed a trail of

blood leading from the truck up to and onto the porch of the Claimant's house. They did not go any further but instead decided to call the sheriff's department. When an officer arrived, he discovered a fire in the house and called the fire department. When the fire department arrived, the fire was out, but the firemen found Gary Vollheim dead on the side porch of the house. Lacerations to Mr. Vollheim's wrists were consistent with suicide. A suicide note was found on the kitchen table.

The experts that investigated the scene said that papers were piled in a hallway and set on fire. . . . Because the fire burned itself out, most of the damage was smoke-related. The damage was significant.

*Farrar I*, 337 S.W.3d at 832-33 (footnote in original omitted).

In *Farrar I*, the Claimant raised the affirmative defense of estoppel. His contention was based upon the alleged misrepresentation of the Agent as to the meaning of question 13 on the application. Our ruling on that issue was as follows:

The Claimant argues that Tennessee Farmers should be estopped from asserting the non-disclosure of the life estate on the application. . . . The trial court held, on this point, as follows:

The burden of proving the [Agent] . . . misled Mr. Farrar in giving an incorrect answer would be on Mr. Farrar. And I think based upon the proof that is presented to me or has been presented to me, that he's not met this burden. Essentially it's his word against Mr. Dyer's, plus the written application.

The Claimant argues that the trial court erred in holding that he had the burden of proof. He argues that the burden of proof of a misrepresentation defense is on the insurer. . . . The trial court correctly placed the burden of proof of the affirmative defense of estoppel on the Claimant, and we do not find that the evidence preponderates against the court's factual determination that he did not carry his burden. . . .

-4-

\* \* \*

In this case the Claimant testified that he signed the insurance application. He said, "I read over it briefly, probably not as well as I should've. But I read – I read and saw that all the blanks were filled in." Later when asked if he looked at the question in dispute, he said, "I didn't specifically just look at that question. I just – I didn't reread every question in the thing before I signed it. I just looked and saw that all the blanks were filled in." In this case the application also contained an acknowledgment above the signature line that provides: "I (We) have read all of the above pages of this application and the 'Applicant's Additional Remarks Form' (if used), and acknowledge that they supersede all informal understandings or oral agreements relating to this offer to purchase insurance." When asked if he read the acknowledgment, the Claimant said, "I probably read it but I didn't – I just didn't note it."

\* \* \*

. . . . We affirm the trial court's dismissal of the Claimant's counterclaim.

*Id*. at 837-38.

The complaint in the present case seeks damages of $150,000 based upon the following allegations:

Plaintiff relied to his detriment upon the representation of [the Agent] to the effect that question 13 in the application did not refer to life estates. His reliance was reasonable, justifiable and understandable.

As a result of plaintiff's reliance on [the Agent's] representation that question 13 did not refer to life estates, . . . the policy that was issued . . . became contestable by [the] Company for material misrepresentation. Indeed, after the fire [the Company] did contest the policy, and its decision to contest the policy has been upheld in the courts.

-5-

Plaintiff alleges that the actions of [the Agent] amounted [to] failure to procure insurance and constituted a breach of the contract to procure insurance for plaintiff.

The defendants moved for judgment on the pleadings or for dismissal for failure to state a claim. They attached a copy of our opinion in *Farrar I* to their motion and asserted that the issue of the Agent's alleged misrepresentation was litigated and determined in *Farrar I*. The Claimant responded that the finding in *Farrar I*, *i.e.*, he did not carry his burden of proof, did not amount to a determination on the merits of the issue. He also asked that the motion be treated as a motion for summary judgment because it introduced material outside the pleadings. The trial court agreed that the defendants' motion should be treated as one for summary judgment and established a schedule for the parties to present evidence in support of their respective positions.

As we have indicated, the trial court granted the motion for summary judgment. Its order states, in pertinent part:

> The Court finds that there is no genuine issue of material fact and that the issue of whether [the Agent] misled [the Claimant] in the application process was previously litigated in [*Farrar I*], that [the Claimant] failed to carry his burden of proof in that case to show that he was misled by [the Agent], and that [the Claimant] may not re-litigate that issue. The Court finds that [the Claimant's] cause of action is barred by the doctrine of collateral estoppel/issue preclusion entitling the defendants to judgment as a matter of law.

II.

The Claimant raises the following issues as taken from his brief:

> Did the . . . Circuit Court properly grant the [defendants'] Motion for Summary Judgment based upon collateral estoppel despite the fact that this lawsuit did not involve the same parties and does not seek to address the same issue?

> Did the . . . Chancery Court in [*Farrar I*] ever make an actual finding of fact as to whether [the Claimant] did or did not tell [the Agent] about the life estate in the coverage case?

-6-

The defendants raise the issue of whether they should be awarded damages for defending a frivolous appeal.

III.

"The standards for reviewing summary judgments on appeal are well settled." ***Eskin v. Bartee***, 262 S.W.3d 727, 732 (Tenn. 2008):

> . . . . Summary judgments are . . . proper in virtually any civil case that can be resolved on the basis of legal issues alone. Thus, a court should grant a summary judgment when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law.
>
> A summary judgment enjoys no presumption of correctness on appeal. Therefore, in each case the appellate court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. We consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor.

***Id***. (citations omitted). "Applications of collateral estoppel and res judicata present questions of law which we review *de novo* with no presumption of correctness." ***Estate of Miller v. Rice***, No. M2011-02152-COA-R3-CV, 2012 WL 3655244 at *1(Tenn. Ct. App. M.S., filed Aug. 24, 2012) (*citing* ***Mullins v. State***, 294 S.W.3d 529, 535 (Tenn. 2009) (collateral estoppel); ***In re Estate of Boote***, 198 S.W.3d 699, 719 (Tenn. Ct. App. 2005) (res judicata)).

IV.

In his brief, the Claimant argues that the parties in the present case are different in that the Agent was not a party in ***Farrar I*** but is a defendant in the present case. The defendants correctly point out in their brief that defensive collateral estoppel, asserted by a new defendant in a second lawsuit, does not require complete mutuality of parties. ***Trinity Industries, Inc. v. McKinnon Bridge Company***, 77 S.W.3d 159, 185 (Tenn. Ct. App. 2001).

In his reply brief, the Claimant "concedes that the issue of whether [the Agent] misled [the Claimant] was litigated" in ***Farrar I***. The Claimant, in effect, abandons the new-party argument when he makes the additional concession that "[h]ad the Chancellor supported his dismissal with a finding of fact that [the Agent] had not misled [the Claimant], . . . then the

-7-

[defendants] would be correct in [their] contention that litigation over that factual dispute is barred by collateral estoppel/issue preclusion." The Claimant's reply brief contains the latest and clearest articulation of the Claimant's position:

> It is [the Claimant's] contention that there is a distinction between a trier of fact finding that a party has failed to carry his burden of proof versus a trier of fact making an actual, concrete determination that a fact does or does not exist or that an event did or did not occur.

(Underlining in original.) The Claimant contends that the issue of whether the Agent is liable "is still open to litigation until a trier of fact finds that [the Agent] did or did not mislead [the Claimant] when [the Claimant] submitted his application for insurance."

The parties have furnished us no cases on this exact point, and we have found none in Tennessee directly on point. However, our own research shows that it is generally accepted that an issue is deemed to be litigated and determined, "if the party with the burden of proof on that issue fails to introduce any evidence with respect to it or introduces evidence but fails to sustain his burden." Restatement, 2d, *Judgments* § 27 (1982); *see **Yates v. U. S.**,* 354 U.S. 298, 335-36, 77 S. Ct. 1064, 1085-86 (1957)(overruled on other grounds) ("[A] party may be precluded under the doctrine of collateral estoppel from attempting a second time to prove a fact that he sought unsuccessfully to prove in a prior action."); ***Union Telephone Co. v. Qwest Corp.*** 495 F.3d 1187, 1195 (10th Cir. 2007) ("A judgment that a party has failed to carry their burden of proof may preclude that party, under the doctrine of collateral estoppel, from attempting to prove the same issue in a later adjudication.").

We believe that the view espoused in the Restatement and in the cases we have cited is correct. Otherwise, even a judgment entered on a jury's response to a verdict form or a special interrogatory would be ineffective to preclude subsequent litigation anytime the questions posed were worded in terms of whether the plaintiff had proven an element or elements of the case "by a preponderance of the evidence." *See* Tennessee Practice Vol. 8, *Tennessee Pattern Instructions, Civil* 2.40 (2009)(explaining the burden of proof and the effect of failure to meet that burden); *Id*. appendix at 818, (verdict form for retaliatory discharge). We hold that the determination in ***Farrar I*** that the Claimant failed to carry the burden of proving that the Agent misled him bars him from trying to prove that the Agent misled him in the present case.

The defendants ask us to award damages pursuant to Tenn. Code Ann. § 27-1-122 (2000) for a frivolous appeal. The statute provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

The defendants assert, quoting **GSB Contractors, Inc. v. Hess**, 179 S.W. 3d 535, 548 (Tenn. Ct. App. 2005), that "an [a]ppellant who fails to cite to any authority on appeal to support a reversal of a trial court's findings, especially when even cursory research would reveal the state of the law in this state, runs the risk of having his appeal deemed frivolous.". . . We find the defendants' reliance on this particular quotation to be somewhat ironic because, as we have pointed out, neither party provided us with any authority directly on point. In the absence of controlling authority from within this state on the point, and the absence of any authority in the defendants' brief directly on point, we will not hold that the plaintiff was so blatantly wrong that he should be forced to pay damages for a frivolous appeal. *See* **Combustion Engineering v. Kennedy**, 562 S.W.2d 202, 205 (Tenn. 1978)(a frivolous appeal is one that is completely void of merit); **Davis v. Gulf Ins. Group**, 546 S.W.2d 583, 586 (Tenn. 1977)(a frivolous appeal is one that has no reasonable chance of success).

V.

The judgment of the trial court is affirmed. The defendants' request that we award damages for a frivolous appeal is denied. Costs on appeal are taxed to the appellant, Gerald Farrar. This case is remanded, pursuant to applicable law, for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE