IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 11, 2007 Session

## SONJA FILSON, ET AL. v. SETON CORPORATION d/b/a BAPTIST HOSPITAL, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 04C-2348     Marietta Shipley, Judge**

---

**No. M2006-02301-COA-R9-CV - Filed January 27, 2009**

---

A mother who had recently given birth was given someone else's child to nurse, but realized the mistake after a short time. The mother and father filed suit against the hospital alleging, among other things, negligent infliction of emotional distress. The hospital admitted a breach of the standard of care, but argued on summary judgment that there was no genuine issue of material fact regarding the mother's lack of emotional injuries as required by *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996). The trial court granted partial summary judgment to the defendant hospital by limiting the mother's claim for damages to those suffered within ten days of the hospital's error while the couple awaited confirmation that the baby they brought home was their biological child. We affirm the trial court in part and reverse in part.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed in Part, Reversed in Part**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., joined. WILLIAM B. CAIN, J., not participating.

B. Keith Williams, Lebanon, Tennessee, for the appellants, Sonja Filson and Timothy Filson.

Mary Martin Schaffner, Nashville, Tennessee, for the appellee, Seton Corporation, d/b/a Baptist Hospital.

### OPINION

### I. THE ERROR AT THE HOSPITAL

On August 15, 2003, Sonja Filson delivered her second child, Trista Filson, by scheduled caesarean section at Baptist Hospital. On the same day, Amber Hobbs gave birth to her first child, Chloe King. Some time between 1:00 and 2:00 in the morning of August 17, a nurse at Baptist

mistakenly delivered Chloe from her crib in the hospital nursery to the dimly-lit room of Sonja Filson to be nursed.[1]  Ms. Filson's husband, Timothy Filson, was in the room with his wife.

Believing that the infant was her own child, Ms. Filson attempted to nurse her.  Chloe's mother had decided on bottle-feeding, and the infant had never nursed before.  She did not nurse well, but cried and screamed.  After a few minutes Ms. Filson realized that something was wrong. Timothy Filson turned on the light, and Sonja Filson saw that the infant did not quite look like Trista.[2]  She compared the numbers on her armband with those on the baby's armband and saw that they did not match.  She realized that the baby she had been nursing was not her child.

Alarmed, Ms. Filson jumped out of bed with the baby in her arms, allegedly causing injury in the area of her incision.  She and Mr. Filson went to the nursery, where they saw that the bassinet labeled with Trista's name was empty.  Seven to ten infants were in other bassinets.  The Filsons waited anxiously while the nurses checked the other bassinets for their baby.  They found Trista in a baby carrier labeled with the name Hobbs.  Trista's ankle identification bracelet was missing, and could not be found.  However, she was still wearing her wrist identification bracelet and her security bracelet.[3]  After checking the identification bracelets of the other infant, Ms. Filson and the nurses realized that she had breast-fed Chloe King.

After this disturbing incident, Ms. Filson consented to a blood test to alleviate any concerns Amber Hobbs might have about Chloe King's contact with her.  Since she felt some uncertainty as to whether the infant wearing Trista's wrist security bracelet was indeed her daughter, she also requested a DNA test to address her own concerns about the true identity of the child.  She took Trista home and had to wait ten days for the DNA test results.  The test confirmed that the infant she took home was indeed her biological child.

## II. COURT PROCEEDINGS

On August 13, 2004, Sonja Filson and her husband filed a complaint against Baptist Hospital in the Circuit Court of Davidson County.  They contended that Baptist Hospital's employees had been negligent in failing to maintain proper identification and security measures for newborns in the hospital's nursery, resulting in Ms. Filson being given the wrong infant to nurse.

---

[1]This is a companion case to *Amber Hobbs et al v. Seton Corp. d/b/a Baptist Hospital*, No. M2006-01548-COA-R3-CV.  Both cases arose out of the same incident. In *Hobbs*, the plaintiff was the mother of the child who was mistakenly taken to Ms. Filson.

[2]Ms. Filson testified that Trista and Chloe were of almost identical weight and hair color.

[3]The record indicates that three bracelets are placed on all newborn infants at Baptist Hospital. Identification bracelets at wrist and ankle display the name and I.D. number of the child. A security bracelet does not show the child's name, but sets off alarms if the infant is removed from a designated area.

The Filsons claimed in general terms that the hospital's error subjected them to pain and suffering and emotional distress. They also claimed that Sonja Filson suffered physical injury when she jumped out of bed, and they asked for compensatory and punitive damages.[4] Their complaint was subsequently amended to name Seton Corporation, the owner of Baptist Hospital, as the proper defendant, and to allege that because of their uncertainty as to whether the child they took home with them was indeed their biological child, they were unable to sleep for ten days and they were emotionally and mentally upset.

The hospital subsequently filed a motion for summary judgment arguing in part that the Filsons had not offered any expert medical or psychological proof as to the "severe emotional injury" they claimed to have suffered and contended that even if the court ruled that expert opinion was unnecessary under the circumstances, their claimed emotional injuries were not sufficiently serious or severe to entitle them to relief under the standards established by our Supreme Court for such claims. In support of this aspect of their motion, the hospital filed a Statement of Undisputed Facts on Behalf of Baptist Hospital. Among the facts the hospital alleged were not disputed is the following, supported with citations to Mr. and Ms. Filson's depositions.

> Neither of the Filsons sought professional help for the injuries they claim in this action, and no doctor or psychologist has said that either of them suffered "serious mental injury" as a result of the incident.

In their response to the hospital's motion, the Filsons characterized the hospital's motion as attempting to "grossly and unduly trivialize the real ordeal of the Plaintiffs," including their uncertainty as to whether they had carried the correct child home, which clouded "the first ten magical days of bonding between a mother and child."

They first contended that because of Ms. Filson's alleged physical injury from jumping out of bed, they did not need expert medical testimony to support their claim for emotional distress. In the event the court found expert proof necessary, however, the Filsons also filed the affidavit of Dr. Casey Arney, a Tennessee psychiatrist, who performed a psychiatric evaluation of Ms. Filson. Dr. Casey saw Ms. Filson for one and one-half hours two days before his affidavit was filed to contest the summary judgment motion. Dr. Casey opined that Ms. Filson "suffers or suffered from the serious emotional/psychiatric condition of dysthymia" that was caused by the incident at issue. Dr. Casey describes "dysthymia" as a "chronic low-grade depressive syndrome." Finally, Ms. Filson also filed her affidavit describing her immediate reaction to the incident and the ten days awaiting the DNA test, *i.e.* sleep deprivation, depression, excessive crying. In addition, she described a loss of trust in professionals.

---

[4]Ms. Filson testified by affidavit that before she jumped from the bed she had not had any unexpected pain from her cesarean surgery. However, she stated that during the remainder of that night and the following day, she suffered sharp and intense pain for which she requested and received additional medication. This is the extent of her alleged physical injuries.

On February 24, 2006, the trial court conducted a hearing on the motion for summary judgment. The court's memorandum opinion, filed on March 29, 2006, granted partial summary judgment to the defendant. The court noted that the hospital admitted simple negligence in bringing the wrong baby to Ms. Filson and that the emotional injury alleged by the Filsons was primarily fear that something had happened to their own baby. The court found that there was a genuine dispute of material fact as to the seriousness of Ms. Filson's emotional injury, and it therefore concluded that it would be error to dismiss her entire claim on summary judgment. The court reasoned that the evidence showed that the couple clearly suffered from an initial fear that their baby was gone, or that the baby they brought home from the hospital was not theirs, and then had to wait ten days to be certain they had brought the right baby home.

Consequently, the court held that the Filsons were entitled to pursue their claim for emotional damages, but limited the period of time for which they could claim such damages to the ten days between the incident at the hospital and the results of the DNA test. The claim for physical injury to Ms. Filson for her quick exit from the bed was also allowed to stand. The court's order cut off the possibility that the Filsons could recover for any residual emotional injury they may have experienced after the ten day period, such as the feelings of depression or helplessness they alleged.

The Filsons subsequently filed a Tenn. R. App. P. 9 application for permission to appeal from the trial court's order. The hospital did not oppose the application. This court granted the interlocutory appeal, and set out the issues we wished to have argued.[5] We also ordered the clerk to schedule oral argument on this appeal on the same date as the companion case of *Hobbs v. Seton*, *supra*, so the two cases could be argued consecutively.

## III. SUMMARY JUDGMENT

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *BellSouth Advertising & Publishing Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). We review the summary judgment decision

---

[5]This court's order granting the Filsons' application for interlocutory appeal directed them to address the following issue in their brief:

(1) Whether the trial court erred in limiting the period of time of the actual exposure to fear to a maximum of ten days.

The hospital was directed to respond to the Filson's brief and to also address,

(1) Whether it is the role of the trial court to determine, as a matter of law, whether the plaintiff sustained serious or severe injuries and whether the emotional injuries the plaintiff can claim are supported by expert proof; and

(2) Whether, based on the undisputed facts, the trial court erred in not dismissing the plaintiff's claim for negligent infliction of emotional distress in its entirety.

as a question of law. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

The requirements for the grant of summary judgment are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764; *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). Consequently, summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Staples*, 15 S.W.3d at 88.

In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and we must afford that party all reasonable inferences. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001).

A party seeking summary judgment must demonstrate the absence of any genuine and material factual issues. *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998) (citing *Byrd v. Hall*, 847 S.W.2d at 214). To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 9 (Tenn. 2008). As to the second method, the standard is whether the moving party establishes that the nonmoving party *cannot establish* an essential element *at trial*, not whether the nonmoving party's evidence *at the summary judgment stage* is sufficient to establish an essential element. *Id.*, at 7.

"When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be must be resolved by the trier of fact." *Staples v. CBL & Associates*, 15 S.W.3d 83, 86 (Tenn. 2000) (citing *Byrd v. Hall*, 847 S.W.2d at 215). If, and only if, the moving party successfully negates an essential element of the nonmoving party's claim or demonstrates the nonmoving party's inability to prove an essential element at trial, the burden shifts to the non-moving party to at least create a dispute of fact as to the element. If the moving party does not meet its burden, however, there is no shifting of the burden to produce evidence, and it is premature to examine the sufficiency of the evidence presented by the nonmoving party at the summary judgment stage. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d at 7 (discussing its decision in *McCarley*).

## IV. STANDARDS FOR EMOTIONAL DISTRESS CLAIMS

This facts of this case highlight the unique nature of claims for negligent infliction of emotional distress. Modern Tennessee jurisprudence on claims for emotional distress begins with *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996). In that case, our Supreme Court analyzed in detail the development of the law in regard to claims for emotional injury, in Tennessee and other jurisdictions, and explained the considerations underlying its evolution as follows:

> Any survey of the law in this area must begin with a clear and frank recognition that the law of negligent infliction of emotional distress, however it is formulated in a specific jurisdiction, is fundamentally concerned with striking a balance between two opposing objectives: first, promoting the underlying purpose of negligence law-that of compensating persons who have sustained emotional injuries attributable to the wrongful conduct of others; and second, avoiding the trivial or fraudulent claims that have been thought to be inevitable due to the subjective nature of these injuries.

*Camper v. Minor,* 915 S.W.2d 437 at 440. *See also Flax v. Daimler Chrysler Corp.*, ___S.W.3d ___, 2008 WL 2831225, at *3 (Tenn. July 24, 2008).

As the Tennessee Supreme Court recently reiterated, several lingering concerns[6] about permitting damages for purely emotional injuries have shaped the development of the law in this area, leading courts to recognize a number of principles designed to assist courts and juries in "separating the meritorious and compensable claims from those that are not." *Eskin v. Bartee*, 262 S.W.3d 727, 733 (Tenn. 2008). In fact, all the special requirements that Tennessee courts have historically placed on claims for emotional distress were designed to effectuate "the courts' desire to separate, at the *prima facie* stage and in a meaningful and rational manner, the meritorious cases from the nonmeritorious ones." *Camper v. Minor*, 915 S.W.2d at 445. That desire continues to guide our consideration of emotional distress claims. *Eskin v. Bartee*, 262 S.W.3d at 734.

---

[6] Among those concerns are:

> (1) the problem of permitting legal redress for harm that is often temporary and relatively trivial; (2) the danger that claims of mental harm will be falsified or imagined; and (3) the perceived unfairness of imposing heavy and disproportionate financial burdens upon a defendant, whose conduct was only negligent, for consequences which appear remote from the "wrongful act."

*Eskin v. Bartee*, 262 S.W.3d at 733 (quoting W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 54, 360-61 (1984).

The Court in *Camper* discarded the "physical manifestation" rule requiring attendant physical injury,[7] described the elements of a *prima facie* case of negligent infliction of emotional distress, and added special proof requirements due to its concern to avoid exaggerated, fraudulent or frivolous claims. The requirements for a successful claim based solely on negligent infliction of emotional distress are now well settled.

First, a claim for negligent infliction of emotional distress is to be analyzed in Tennessee under a general negligence approach. *Eskin*, 262 S.W.3d at 735; *Camper*, 915 S.W.3d at 446. Thus, in order to make a *prima facie* case, the plaintiff must present material evidence as to each of the five elements of general negligence - duty, breach of duty, injury or loss, causation in fact, and proximate or legal cause. *Eskin*, 262 S.W.3d at 735; *Lourcey v. Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004); *Camper*, 915 S.W.2d at 446.

Second, where a plaintiff brings a "stand-alone" negligent infliction of emotional distress claim, special proof requirements apply to the injury or loss element: (1) the claimed emotional injury must be serious or severe and (2) the claimed injury must be supported by expert proof. *Eskin*, 262 S.W.3d at 735; *Camper*, 915 S.W.2d at 446; *Flax*, 2008 WL 2831225, at *3. As to the first requirement, "[a] 'serious' or 'severe' emotional injury occurs 'where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case.'" *Camper*, 915 S.W.2d at 446.

The same year *Camper* was decided, the Tennessee Supreme Court reiterated that fright, fear, hurt feelings, etc. are not sufficient for recovery - "[o]nly those serious or severe emotional injuries which **disable a reasonable, normally constituted person from coping adequately with the stress**" can support recovery, and that the severity of the injury must be established by expert proof. *Ramsey v. Beavers*, 931 S.W.2d 527, 532 (Tenn. 1996). The Court in *Ramsey* further elaborated that a "person of ordinary sensibilities" is a "reasonable, normally constituted person." *Id*. at n.3.

Thus, in order to state a *prima facie* case for a stand-alone claim of negligent infliction of emotion distress, the plaintiff must prove by medical expert or scientific proof that the emotional injury is so onerous as to render a reasonable person, normally constituted, "unable to cope with the mental stress caused by the negligence." *Flax*, 2008 WL 2831225, at * 4. In other words, there must be expert proof that the emotional injury was such that would, in essence, disable a reasonable person.

---

[7]Prior to the decision in *Camper*, a plaintiff was required to show that he or she had sustained a physical injury before being allowed to recover for emotional and mental damages. "The physical injury requirement served to objectify the inquiry; it assured that the plaintiff's allegations of emotional injury were grounded in an independently verifiable event." *Camper v. Minor*, 915 S.W.2d at 445 (quoting *Carroll v. Sisters of Saint Francis,* 868 S.W.2d 585, 589 (Tenn. Ct. App. 1993)).

The "special proof requirements in *Camper* are a unique safeguard to ensure the reliability of 'stand-alone' negligent infliction of emotional distress claims." *Flax*, 2008 WL 2831225, at * 4 (quoting *Amos v. Vanderbilt University*, 62 S.W.3d 133, 136-37 (Tenn. 2001)).[8] A "stand-alone" negligent infliction of emotional distress claim is one that seeks recovery only for emotional injuries, or is based solely on the emotional distress cause of action. *Amos*, 262 S.W.3d at 137; *Flax*, 2008 WL 2831225, at *4. On the other hand, the special proof requirements do not apply when "emotional damages are a 'parasitic' consequence of negligent conduct that results in multiple types of damages." *Flax*, 2008 WL 2831225, at *4 (quoting *Amos*, 62 S.W.3d at 137).

The Tennessee Supreme Court recently elaborated on the situations in which the special proof requirements established in *Camper* apply, stating:

> The plaintiffs also argue that the NIED [negligent inflection of emotional distress] claim is valid because Ms. Sparkman suffered minor physical injuries in the accident but chose not to bring a claim for those injuries. This argument has two flaws. First, the plaintiff in *Camper* also suffered minor injuries for which he did not file a claim. 915 S.W.2d at 439 (quoting the plaintiff's testimony that he suffered a scrape on his knee in the accident).[9] Clearly, the plaintiff's minor injury in *Camper* did not prevent us from concluding that heightened proof requirements are necessary for NIED claims. *See id*. at 446. Second, the emotional injuries alleged by Ms. Sparkman are not parasitic to the minor injuries she sustained in the accident but rather are the result of witnessing the death of her child. Even if Ms. Sparkman had chosen to bring a claim for her minor physical injuries, **her NIED claim would remain a "stand-alone" claim because the emotional injuries sustained from witnessing the death of her child are completely unrelated to any physical injuries she may have sustained.** Of course, Ms. Sparkman would not have been required to meet the *Camper* requirements to recover for any mental and emotional suffering resulting from her own physical injuries. *See Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 715 (Tenn. Ct. App. 1999) (holding that damages for pain and suffering in a personal injury case may include a variety of mental and emotional injuries that accompany the physical injury). When a plaintiff suffers a physical injury there is some indication that allegations of emotional and mental injuries resulting from that injury are not fraudulent. *See Amos*, 62 S.W.3d at 137. On the other hand, **having a potential claim for physical injuries does nothing to ensure the reliability of an**

---

[8]In *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999), the Tennessee Supreme Court held that when the action is for *intentional* infliction of emotional distress, expert proof is not necessary since the "added means of reliability, *i.e.*, insurance against frivolous claims" is found in the plaintiff's burden of proof, *i.e.*, that the conduct is outrageous. The complaint in the present case initially included a claim for intentional infliction of emotional distress, but that claim was abandoned by plaintiffs.

[9]The plaintiff in *Camper* alleged a minor physical injury, a bruised knee. *Camper*, 915 S.W.2d at 439. The Court in *Camper* clearly disregarded this physical injury and on remand required the plaintiff to meet the special proof requirements regardless of the nominal physical injury.

**NIED claim relating to the emotional injuries resulting from witnessing the death or injury of a third party.** Accordingly, there is no good reason to relieve Ms. Sparkman of her burden of meeting the *Camper* requirements.

*Flax v. DaimlerChrysler Corp.,* 2008 WL 2831225, at *6 (emphasis added).

Thus, in order to avoid the special proof requirements for a claim for emotional injury on the basis of an additional allegation of physical injury, the plaintiff must show that the emotional injury is parasitic to, or flows from, the alleged physical injury. Under the rationale of *Amos* and *Flax,* an allegation of nominal physical injury that is unrelated to the alleged emotional injury is not sufficient to eliminate the special proof requirements of *Camper*.

With the foregoing in mind, we turn our attention to the facts and arguments in this appeal.

## V. ANALYSIS

It is clear that to establish a *prima facie* case for negligent infliction of emotional distress, the Filsons were required to provide expert evidence that a serious or severe emotional injury has occurred such that a "reasonable person, normally constituted, would be unable to adequately cope with the mental stress" caused by the negligence. Medical or scientific expert testimony that the type of serious or severe emotional injury discussed in *Camper* exists is essential to the maintenance of their claim.[10]

The hospital's motion for summary judgment, filed on January 10, 2006, was accompanied by its Statement of Undisputed Facts. Relying on citations to the Filsons' deposition testimony, one of the statements was that plaintiffs had not established by the special proof required in *Camper*, *i.e.*, expert medical or scientific proof, that the negligence of the hospital either factually or legally would leave a reasonably constituted person unable to adequately cope with the mental stress caused by the negligence.

The Filsons' response was to get a a psychiatric evaluation of Ms. Filson to address the deficiency in their proof pointed out by the hospital. The result was the affidavit of Dr. Arney stating he had evaluated Ms. Filson on February 15, 2006, and that in his opinion she suffers or suffered

---

[10]The Filsons argue that since Ms. Filson allegedly suffered physical injury when she got out of the bed, then under *Amos* she need not present the special expert proof of emotional injury required by *Camper*. The physical injury to which Ms. Filson is alluding is the strain on her cesarean surgery incision, which she alleges caused her brief pain but no other consequences. At most, Ms. Filson was given additional pain medication for 24 hours. Ms. Filson required no treatment or other medical attention for this strain on her incision. Ms. Filson's claim of personal injury that she strained her incision does not relieve her of the special proof requirements of *Camper*. Applying the rationale discussed in *Amos* and *Flax*, her claim for emotional injury is not a "parasitic" consequence of negligent conduct that results in multiple types of damages. She has alleged that her emotional injury arose from her fear that she took home the wrong baby. There is no allegation that she suffered any emotional injury traceable to her alleged minor physical injury.

from "the serious emotional/psychiatric condition of dysthymia that was directly caused by the events of negligence that took place on August 15, 2003 in this matter."

His attached "Independent Psychiatric Evaluation" cites his review of medical records and the fact that Ms. Filson was referred by her attorney for an independent psychiatric evaluation and recounts what she told him during their one and a half hour interview. Ms. Filson reported that she was sad for several months after the incident at the hospital. While she used to love going to the lake, skiing and shopping with friends and was outgoing and bubbly, "[n]ow she feels not so up beat and outgoing." She reported she is not as trusting as she used to be and also reported decreased sleep, decreased enjoyment, and varying but overall decreased energy. She does not often let others take care of Trista, and she had not returned to her work as a dental hygienist so she can be with her daughter.

The psychiatrist stated that Ms. Filson denied any suicidal thoughts, had not sought any mental health treatment, had not been prescribed any antidepressant medicine, and had not seen a psychiatrist or other therapist, other than seeing Dr. Arney for the purposes of the current litigation. Dr. Arney concluded that Ms. Filson's symptoms do not meet the criteria for major depression, but are consistent with dysthymia, which he describes as "a chronic low-grade depressive syndrome."

Additionally, the Filsons filed an affidavit from Ms. Filson one week before the hearing on the hospital's motion for summary judgment. In that affidavit, Ms. Filson addressed only the fear and uncertainty she experienced while in the hospital and during the following ten days, until the DNA reports confirmed her child's identity. Among other things, she testified that "[w]e feared many scenarios including that the bracelets had fallen off and inappropriately replaced in some fashion. This led to uncertainty and fear for 10 days that we had carried the wrong child home." In this appeal, the Filsons also claim that the negative feelings produced by the incident lingered long after the DNA test results were returned and that Dr. Arney's affidavit demonstrates a longer-lasting emotional injury.

It is clear to us that the Filsons' filings failed to establish, by the necessary type of testimony, that the hospital's negligence caused or would cause the degree of mental injury described in *Camper* during the initial ten day period or thereafter. Ms. Filson's affidavit does not describe a debilitating emotional condition; more importantly, it does not constitute expert proof. The *Camper* standard requires expert medical or scientific proof. There is no expert proof regarding the nature or severity of any emotional injury occurring during the ten days before the DNA test results confirmed the identity of the Filsons' child. Neither of the Filsons sought counseling or other help for their emotional injury during this time or shortly thereafter, making it unlikely they could produce expert testimony regarding their injuries during that time.

Further, the expert testimony offered by the Filsons does not establish a serious or severe emotional injury, measured by the required legal standard, either during the ten day period or later. Dr. Arney's affidavit does not say that the incident that occurred herein would render a reasonable person, normally constituted, unable to adequately cope with the mental stress caused by the

negligence, nor does he reach a similar conclusion stated differently. Dr. Arney opines that Ms. Filson "suffers or has suffered from" mild depression. That is simply not sufficient. Not only does the affidavit fail to show that Ms. Filson herself suffered a serious or severe emotional injury that made her incapable of coping, it does not address the required standard, *i.e.,* the likely disabling effect on a reasonably constituted person. Emotional distress or injury alone is not sufficient injury to recover for negligent infliction of emotional distress - the injury must render a normally constituted person unable to cope.

The issue, therefore, becomes whether this failure to provide the requisite proof as to the elements of a cause of action for negligent infliction of emotional distress requires or authorizes the grant of summary judgment to the defendant hospital. We must consider the standard for summary judgment, with its shifting burdens of proof, as well as the requirements for establishing a *prima facie* case specific to the cause of action alleged.

To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d at 9. As to the second method, the standard is not whether the nonmoving party's evidence at the summary judgment stage is sufficient to establish an essential element. *Id.*, at 7. "When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be must be resolved by the trier of fact." *Staples v. CBL & Associates*, 15 S.W.3d 83, 86 (Tenn. 2000) (citing *Byrd v. Hall*, 847 S.W.2d at 215).

As recently described by the Tennessee Supreme Court, both methods available to the moving party to shift the burden of production to the nonmoving party "require something more than an assertion that the nonmoving party has no evidence." *Martin v. Norfolk Southern Ry. Co.*, __ S.W.3d ___, 2008 WL 4922434, at \*5 (Tenn. Nov. 14, 2008). The Court further explained:

> Similarly, the presentation of evidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient. The moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial. We have held that to negate an essential element of the claim, the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party. If the moving party is unable to make the required showing, then its motion for summary judgment will fail.

*Id.* (citations omitted).

In the case before us, the hospital did not present its own evidence regarding the seriousness, or lack thereof, of any claimed emotional injury. Of course, it would have been difficult for the

-11-

hospital to obtain or provide such evidence regarding the Filsons' emotional injuries. It would have been less difficult, perhaps, for the hospital to have provided expert testimony regarding the effect of the events at the hospital on a reasonable person, normally constituted, as to such a person's ability to cope with any mental stress resulting from those events.

Instead, the hospital relied upon the Filsons' deposition testimony clearly indicating at the time the depositions were taken that plaintiffs were not able to make a *prima facie* case as required in *Camper*. As the Supreme Court stated in *Martin*, the moving party may refer to evidence already submitted by the nonmoving party to meet its burden. The Filsons responded to the motion for summary judgment by submitting new or additional evidence, the affidavit of Ms. Filson and the affidavit of Dr. Arney. As discussed earlier, that evidence did not meet the requirements of *Camper*.

In similar circumstances, appellate courts have ruled that summary judgment for the defendant(s) was appropriate. *See, e.g., Miller v. Niblack*, 942 S.W.2d 533-542 (Tenn. Ct. App. 1996) (affirming the trial court's grant of summary judgment of plaintiffs' negligent infliction of emotional distress claim based on absence of medical expert or scientific proof of serious injury); *Coleman v. Wilwayco*, M2005-00075-COA-R3-CV, 2006 WL 140390, at *2, 8 (Tenn. Ct. App. Jan. 17, 2006), (affirming trial court's grant of summary judgment to defendant on plaintiff's negligent infliction of emotional distress claim where the "sole ground upon which Defendants based their motion was the absence of any proof Plaintiff had suffered a severe or serious emotional injury," since the plaintiff failed to provide the expert testimony required under *Camper* and, therefore, "failed to carry his burden in establishing a *prima facie* case of negligent infliction of emotional distress").

In fact, in *Camper v. Minor*, the Tennessee Supreme Court stated that the plaintiff must present evidence as to each of the elements of negligence in "order to avoid summary judgment" and that serious or severe injury must be proved by expert or scientific proof. 915 S.W.2d at 446. *See also, Bain v. Wells*, 936 S.W.2d 618, 624 (reciting the *Camper* requirements to establish a *prima facie* case of negligent infliction of emotional distress).

As the earlier discussion of the law of negligent infliction of emotional distress makes clear, Tennessee courts have historically been guided by the goal of separating, at an early or *prima facie* stage, meritorious claims for purely emotional injuries from those that are not. *Eskin v. Bartee*, 262 S.W.3d at 733; *Camper v. Minor*, 915 S.W.2d at 445. In discussing the three distinct causes of action that allow recovery for "purely emotional harm," *i.e.*, negligence, reckless and intentional infliction of emotional distress, the Supreme Court recently stated:

> [W]e express confidence in the court system to winnow out false and frivolous claims through the pretrial and trial processes and through conscientious application of the elements necessary to establish causes of action for purely emotional harm.

*Doe v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 39 (Tenn. 2005).

Based upon this clear directive that courts conscientiously apply, at an early stage, the requirements to establish a cause of action for negligent infliction of emotional distress, we must conclude that the hospital was entitled to summary judgment dismissing the lawsuit in its entirety. Expert proof of a serious or severe emotional injury that would render a normally constituted person unable to cope with the stress is required to make out a *prima facie* case of neglect infliction of emotional distress. The Filsons did not provide that evidence.

Although, as a general rule, a defendant moving for summary judgment must do more than point out the insufficiency of the plaintiff's proof, we must reconcile that general rule with precedent regarding the requirements for establishing a *prima facie* case for this particular cause of action. Additionally, the Filsons did not argue they need not come forward at the summary judgment stage with the required proof; instead, they submitted additional affidavits, which also failed to meet the requirements of *Camper*.

Consequently, the trial court's partial grant of summary judgment is affirmed, and the denial of summary judgment for the ten (10) day period while awaiting the DNA test is reversed. Costs of this appeal are taxed to the appellants, Timothy and Sonja Filson, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, P.J., M.S.