# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### January 23, 2013 Session

## CITY OF SOUTH PITTSBURG, TENNESSEE v. JAMES C. HAILEY AND COMPANY, ET AL.

**Appeal from the Circuit Court for Marion County**
**No. 18589     J. Curtis Smith, Judge**

---

**No. M2012-01185-COA-R3-CV - Filed June 27, 2013**

---

In April 2008 the City of South Pittsburg hired a contractor to enlarge its sewage treatment plant. During construction of the project several sinkholes developed, the last of which occurred in February of 2009 and caused the plant's lagoon to collapse. The City made claim on the contractor's builders' risk insurance policy; the insurer denied the claim, contending that construction of the project was complete at the time of the collapse. The City, which had filed suit against the contractor, amended the complaint, adding the insurer as a party and asserting a claim for breach of contract against the company; the City also requested that the court issue a declaratory judgment that the losses sustained by the city were covered by the policy. The court subsequently granted the insurance company's motion for summary judgment and denied the city's motion for partial summary judgment. The city and the engineering firm engaged by the City to plan the project appeal the grant of summary judgment to the insurer and the denial of the city's motion. We have determined that the court erred in granting the insurer's motion and denying the City's; consequently, we reverse both judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and FRANK G. CLEMENT, JR., J., joined.

Tracy C. Wooden, Chattanooga, Tennessee, for the appellant, City of South Pittsburg, Tennessee.

Paul R. Leitner and Amanda E. Kelley, Chattanooga, Tennessee for the appellee, James C. Hailey and Company.

Parks T. Chastain and Gordon C. Aulgur, Nashville, Tennessee, for the appellee, Bituminous Casualty Corporation.

## OPINION

This dispute arises out of a project initiated by the City of South Pittsburg in January 2008 to expand its wastewater treatment plant; the project included demolishing the old plant and building a new lagoon. James C. Hailey & Co. ("Hailey") was the engineering firm engaged to design and supervise the project and W&O Construction Company, Inc. ("W&O") was the contractor. W&O's bid for the project was accepted on April 8, 2008, the contract signed on May 6, and the Notice to Proceed issued on May 16. W&O's contract with the City required it to maintain builder's risk insurance; to comply with this requirement, W&O added the project to its existing commercial liability policy issued by Bituminous Casualty Corporation ("Bituminous"); the City and Hailey were listed as additional insureds under the policy.

The City began operating the new lagoon in late 2008. In February of 2009 a hole developed in the liner of the older lagoon, causing the wastewater to drain; about three days later a hole developed in the liner of the new lagoon, again causing the lagoon to drain completely. The breaches in the liners were caused by sinkholes developing beneath the lagoon. W&O subsequently made a claim under the builder's risk policy; Bituminous denied coverage, contending that the project was not covered by its policy in February 2009.

The City filed suit against Hailey and W&O on August 18, 2009, to recover damages for alleged faulty construction of the project. On January 5, 2011, the City filed an Amended Complaint, adding Bituminous as a defendant and asserting a claim for breach of contract.[1] The parties thereafter filed various dispositive motions; those germane to the issues presented in this appeal are Bituminous' motion for summary judgment filed October 13, and the City's motion for partial summary judgment filed against Bituminous, W&O, and Travelers on November 10.[2] On February 21, 2012, the court granted summary judgment to Bituminous and denied the City's motion for partial summary judgment. The court found that the "course of construction" ended in late 2008 when the new lagoon went into operation and that, under the terms of the policy, coverage ended at that time.

---

[1] Plaintiff amended the complaint on August 15, 2011 to add Travelers Casualty and Surety Company as a defendant; the amended complaint did not change the claim asserted against Bituminous.

[2] Hailey joined in this motion on November 18.

-2-

The City and Hailey appeal. Both contend that the court erred in granting summary judgment to Bituminous; in addition, the City appeals the denial of its motion for partial summary judgment. For the reasons set forth herein, we reverse both judgments.

## I. STANDARD OF REVIEW

A party seeking summary judgment must establish that there is no genuine issue as to any material fact and that judgment may be rendered as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). To show there is no genuine issue of material fact, a defendant moving party must either: "(1) affirmatively negat[e] an essential element of the nonmoving party's claim; or (2) show[] that the nonmoving party cannot prove an essential element of the claim at trial." *Martin*, 271 S.W.3d at 83 (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). To meet this burden, the party must "either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *Id.* at 84. If the moving party makes a "properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Id.* (citing *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993).[3]

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010); *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005). Because summary judgment is a matter of law, we review the trial court's decision *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eskin v. Bartee*, 262 S.W.3d 727, 732 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004). In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Cumulus*

---

[3] This may be accomplished by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.0[7].

*Martin*, 271 S.W.3d at 84 (citing *McCarley*, 960 S.W.2d at 588; *accord Byrd*, 847 S.W.2d at 215 n.6).

*Broad., Inc. v. Shim*, 226 S.W.3d 366, 373 (Tenn. 2007); *Byrd v. Hall*, 847 S.W.2d 208, 210–11 (Tenn. 1993).

## II. DISCUSSION

The primary issue before this court, as in the trial court, is whether the coverage provided by the Bituminous policy was in effect at the time of the loss. The order granting summary judgment to Bituminous and denying the City's motion included the following section entitled "Undisputed Facts":

> The relevant facts pertinent to the motions before the court are undisputed. The City entered into a contract with Hailey and W&O Construction Company, Inc. (W&O) and others to design and construct an expansion to the City's sewage treatment plant. As a part of the construction project a new lagoon was to be built. Pursuant to the contract W&O obtained a policy with Bituminous naming the City and J. C. Hailey as additional insureds.
>
> The new lagoon at the sewage treatment plant went into operation in late 2008. About the second week in February 2009 a hole developed in the liner of the older lagoon causing the wastewater to drain completely. Approximately three days later, a hole developed in the liner of the new lagoon surrounded by a five foot by five foot depression in the ground, causing the wastewater to drain completely.

The court concluded that there was no coverage, stating its reasoning as follows:

> Under the policy, Bituminous is to provide coverage for direct physical loss caused by a covered peril to buildings and structures during the "course of construction, erection, or fabrication." The critical issue before the Court is whether the loss resulting from the damage to the new lagoon occurred during the "course of construction." City alleges in its amended complaint the new lagoon went into operation in late 2008 and the loss did not occur until the second week of February 2009. While the facts here are unlike those in *Dennis* [*v. Allstate Ins. Co.*, No. 01-A-01-9301-CV00009, 1993 WL 177161 (Tenn. Ct. App. May 26, 1993)], the relevant issue in *Dennis* is identical to the one before the Court. Since the new lagoon went into operation in late 2008, under Tennessee law the "course of construction" on the new lagoon ceased at that time in late 2008. The date of loss occurred after the "course of

-4-

construction" ceased therefore there was no coverage under the policy on the new lagoon.

The parties agree that the coverage at issue arises from Bituminous policy CLP 3249023, which was attached as an exhibit to the amended complaint. The initial policy period was January 1, 2008 to January 1, 2009, with the inception date of coverage for the lagoon project of April 14, 2008. A declarations page included in the exhibit shows that policy CLP 3249023 was renewed by policy CLP 3259865 for the period January 1, 2009 to January 1, 2010.[4] The parties also agree that the policy language pertinent to the issues in this appeal is the following:

1.    **Coverage Not Provided During Occupancy And Use** - - "We" do not provide coverage under this policy if, without "our" prior written consent, a covered building or structure as described under Property Covered is:
   a.    occupied in whole or in part; or
   b.    put to its intended use.

2.    **When Coverage Ceases** - - Coverage will end when one of the following first occurs:
   a.    this policy expires or is canceled;
   b.    a covered building or structure is accepted by the purchaser;
   c.    "your" insurable interest in the covered property ceases;
   d.    "you" abandon construction with no intent to complete it; or
   e.    a covered building or structure has been completed for more than 90 days.

**A. Bituminous' Motion for Summary Judgment**

The basis of Bituminous' motion was that "there is no coverage under the Builders' Risk Coverage because the 'course of construction' of the new lagoon had been completed and the new lagoon was put to its intended use months before the date of loss during the second week of February 2009"; in accordance with the requirements of Tenn. R. Civ. P. 56.03, Bituminous filed a Statement of Undisputed Material Facts in support of its motion.

_____

[4] In its Brief on appeal, Bituminous asserts that the applicable policy period was January 1, 2009 to January 1, 2010.

At the trial court and on appeal, Bituminous extrapolates from the allegation in the Amended Complaint that "[t]he new lagoon went into operation in late 2008" to argue:

> In this case, City of South Pittsburg's own Amended Complaint clearly establishes the "course of construction" ceased prior to City of South Pittsburg's own date of loss. As alleged in its Amended Complaint the new lagoon went into operation in late 2008 and the loss did not occurred [sic] until the second week of February of 2009. . . . Therefore, the Amended Complaint and Cross-Claim both rest on the undisputed fact that the date of loss occurred after the "course of construction" ceased, thus there is no coverage under the Builders' Risk Coverage.

The City denied or gave qualified admissions to several statements in its response to Bituminous' Tenn. R. Civ. P. 56.03 statement.[5] The following responses to the statements of material fact appear to be most pertinent with respect to the court's ruling:

> 5.      The Builders Risk policy issued to W&O provides in section IM-724f that the policy covers "direct physical loss caused by a covered peril to buildings and structures while in the course of construction, erection, or fabrication."
> **RESPONSE**: Denied that it *only* provides coverage while in the course of construction, erection or fabrication. . . .

***

> 9.      The new lagoon at the sewer treatment plant went into operation in late 2008.
> **RESPONSE**: Admitted that the new lagoon was tested prior to completion, during the reasonable testing period contemplated by the contract between the City and W&O. For instance, the contract between the City and W&O requires that the builder's risk policy "allow for partial utilization of the Work by Owner," "include testing and startup," and remain in effect until the last payment is made. The builders risk policy purchased by W&O states that coverage will end when the project has been "completed for more than 90 days."

---

[5] In its response, the City also filed the affidavit of William Johnson, an engineer; a letter denying coverage from Michael Swallows, Bituminous' agent; and a memorandum in which it referenced as part of its response W&O's contract with the City which, along with the Standard General Conditions, had been attached as an exhibit to W&O's answer.

15. The builder's risk policy provides coverage for direct physical loss caused by a covered peril to buildings and constructions while in the course of construction, erection or fabrication.

**RESPONSE**: Denied that it *only* provides coverage while in the course of construction, erection or fabrication. . . .

16. Finally, the builder's risk policy provides the additional coverage limitation that the policy does not provide coverage without prior written consent once a covered building or structure is put to its intended use.

**RESPONSE**: Denied that the lagoon was fully put to its intended use, as the contracts between the parties clearly contemplate a reasonable testing period to ensure that the project is truly complete and working properly. The contract between the City and W&O requires that the builder's risk policy remain in effect until the last payment is made. The builders risk policy purchased by W&O states that coverage will end when the project has been "completed for more than 90 days."

In addition, Mr. Johnson's affidavit included the following statements relative to the court's finding that the project was completed in late 2008 and that coverage under the policy ended at that time:

17. Based upon my observations, knowledge, and experience, W&O Construction has not completed the project according to the requirements of its Agreement with the City of South Pittsburg, Tennessee.

18. Based upon my observations, knowledge, and experience, W&O Construction's Agreement with the City of South Pittsburg, Tennessee was to place the expanded sewer treatment facility into an operational condition. Such facility is not in an operational condition.

\* \* \*

20. Based upon my observations, knowledge, and experience, the formation of the sinkhole which has rendered the expanded facility unusable was an entirely foreseeable event, which W&O Construction agreed to remedy under its Agreement with the City of South Pittsburg, Tennessee.

Bituminous relied upon the allegation of the complaint that the plant "went into operation in late 2008" to satisfy its duty to negate an essential element of the City's claim; it argues that the fact that the lagoon was "put to its intended use" in 2008 means that, pursuant to Section 1 of the Additional Coverage Limitations, no coverage was available. The City contends, to the contrary, that its contract with W&O required a testing period, the issuance of appropriate operational permits, the City's acceptance of the project, and final payment before the project was "put to its intended use."[6] The materials put forth by the City satisfied its responsibility to produce evidence establishing genuine issues of material fact for trial, *i.e.*, the date at which construction was completed and the plant put to its intended use in accordance with the contract. Bituminous failed to negate an essential element of the City and Hailey's action, i.e., that coverage was in effect when the damage occurred; consequently summary judgment to Bituminous was inappropriate.[7]

---

[6] We note that W&O's response to the City's motion for partial summary judgment states, in part:

> The City has moved for summary judgment against Bituminous on the grounds that the insurance policy that Bituminous issued to W&O regarding the South Pittsburg Sewer Treatment Plant Expansion Project at issue covers the alleged damages of the City. On or about April 15, 2008, W&O obtained the policy from Bituminous attached as Exhibit D to the City's Amended Complaint with the intent that the policy would adhere to the requirements of W&O to obtain insurance as outlined in the contract between W&O and the City.

This statement is likewise pertinent to the issues raised by Bituminous' motion.

[7] We do not agree with the trial court's application of *Dennis*, 1993 WL 177161 to hold that the "course of construction" in this case ended in 2008. In *Dennis*, a homeowner sought to recover under a homeowners policy for damages caused when the basement wall collapsed following a period of heavy rain. While the property owner conceded that an exclusion for damage resulting from water would prevent coverage, she sought to recover under a separate provision that provided coverage for collapse or the building structure if the collapse occurred in the course of construction; the trial court found coverage. On appeal this court reversed, holding that, in light of evidence that the wall which collapsed had been built during the early stages of the construction project and that the homeowner had been living in the home for more than seven months at the time of the wall collapse with the unfinished items being completed as money became available, the structure was "essentially complete" when the homeowner moved in and, consequently, the collapse did not occur in the course of construction. In this case there is no proof that the construction required by W&O's contract with the City was completed in 2008; to the contrary, the materials filed by the City demonstrate that it was not.

**B. The City's Motion for Partial Summary Judgment**

In support of its motion, the City filed a Tenn. R. Civ. P. 56.03 statement, to which Bituminous responded, the salient portions of which are as follows:[8]

     1.     The City and the W&O Construction Company, Inc., ("W&O"), entered into "Contract 106" for the expansion of the Sewer Treatment Plant (the "Contract") on May 6, 2008.

     2.     Exhibit C to the Amended Complaint is a true and accurate copy of the Standard General Conditions of the Contract between W&O Construction Company, Inc. and the City of South Pittsburg, Tennessee.

               ***

     4.     Article 5.06 of the General Conditions requires W&O to "purchase and maintain property insurance upon the Work at the Site in the amount of the full replacement cost thereof."

     5.     Article 5.06(A)(2) of the General Conditions requires that the insurance "be written on a Builder's Risk "all-risk" or open peril or special causes of loss policy from that shall at least include insurance for physical loss or damage to the Work... and shall insure against at least the following perils or causes of loss: ...extended coverage...collapse...debris removal...".

               ***

     7.     Article 5.06(A)(6) of the General Conditions requires that the insurance "include testing and startup."

     8.     Article 5.06(A)(7) of the General Conditions requires that the insurance shall "be maintained in effect until final payment is made unless otherwise agreed to in writing by Owner, Contractor and Engineer".

     9.     The final payment to W&O had not been made as of the time of the failure of the waste water treatment project.

---

[8] Unless otherwise specified, Bituminous' response to each statement was "Admitted only for purposes of the Motion for Summary Judgment."

10. Defendant Bituminous Casualty Corporation ("Bituminous," "Insurer") provided insurance for the sewer treatment plant expansion project through a policy of insurance purchased by Defendant W&O Construction Company, Inc.

**RESPONSE: Admitted Bituminous only provided a Builder's Risk policy and this policy was subject of its terms and conditions.**

\*\*\*

14. Policy No. 3 259 865 was in effect from January 1, 2009 to January 1, 2010.

\*\*\*

17. The policy specifically covers sinkholes.

**RESPONSE: Admitted the policy terms and conditions speak for themselves.**

\*\*\*

20. The structure had not been accepted by the City.

21. W&O's insurable interest in the project had not ceased, as its contract required it to maintain insurance on the site to include "testing and startup" and to last "until final payment is made."

**RESPONSE: Admitted the terms and conditions of the policy speak for themselves.**

22. W&O had not "abandoned construction with no intent to complete it" at the time of the occurrence of the sinkholes.

23. The new waste water treatment lagoon had not been completed, if at all, for more than 90 days by the second week of February, 2009.

**RESPONSE: Admitted only for purposes of the Motion for Summary Judgment. However, the new waste water treatment lagoon was put to its intended use in November 2008.**

The materials filed relative to the City's motion established that the Bituminous policy was purchased by W&O to satisfy its obligations under the contract with the City and was in effect in the fall of 2008 as well as February 2009; that the policy covered sinkholes; and that, in February 2009 the project was not "completed." This was sufficient to show the absence of a material fact regarding Bituminous' contention that there was no coverage under the policy for the incident in February 2009. 4 Nancy Fraas MacLean, Claudia Bonnyman, & Robert Brandt, *Tennessee Practice Series—Rules of Civil Procedure* AC 56:5 (3d ed. 2000). Bituminous did not file affidavits or other materials to create an issue of fact in response to the City's motion; rather it reiterated its argument that, because the property had been "put to its intended use" in the fall of 2008, there was no coverage.

Inasmuch as there was no issue of fact, we proceed to a determination of whether the City was entitled to judgment as a matter of law.

Bituminous does not contest that the policy covers damage due to sinkholes; rather, it reiterates its contention that the fact that the lagoon was put into operation in 2008 means that, pursuant to Section 1 of the Additional Coverage Limitations, no coverage was available.[9] The record, however, shows that, while construction on the new lagoon had reached a point in the fall of 2008 at which time the plant could be put into operation for purposes of testing and startup, it was not in such an operational condition that construction was complete. The project had not been "put to its intended use" at the time of the February 2009 incident.[10]

---

[9] Bituminous also argues that the City's arguments regarding the 2008 sinkholes were not presented to the trial court and that, in any event, the Amended Complaint does not allege that the 2008 sinkholes caused any damage; this is contrary to the record. The amended complaint includes the following allegations:

> 42. No less than six sinkholes developed within the new lagoon site during the Contractor's construction work on the project requiring some manner of repair.
> 43. Upon information and belief, Contractor did not investigate or insist on additional technical studies into the cause of the sinkholes developing at the site, not into whether sinkholes would continue to develop at the site after the lagoon was places in operation and what additional steps would be necessary to remedy the defects.

In addition, in its Motion To Revise the court's order granting summary judgment to Bituminous, the City argued (with citations to the record) that "the failure of the project began in the summer of 2008," "the sinkhole development clearly began during construction," and that "a series of sinkholes developed during the work at the site."

[10] In neither the pleadings it filed in support of its motion for summary judgment nor those filed in opposition to the City's motion does Bituminous explain the apparent inconsistency between its position that

(continued...)

On the record before us, we agree with the City that the policy was in effect in February 2009 and covered the incident at issue; consequently, the City was entitled to summary judgment.

## III. CONCLUSION

For the foregoing reasons, we reverse the grant of Bituminous' motion for summary judgment and the denial of the City's motion for partial summary judgment and remand for further proceedings consistent with this opinion.

_____
RICHARD H. DINKINS, JUDGE

[10](...continued) coverage ended in the fall of 2008 with the fact that it reissued the builder's risk policy effective January 1, 2009.